***********
The undersigned have reviewed the prior Decision and Order based upon the record of the proceedings before Deputy Commissioner Pfeiffer. The appealing party has shown good grounds to amend the prior Decision and Order. Accordingly, the Full Commission REVERSES the Deputy Commissioner's holding and enters the following Decision and Order.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. This action filed by plaintiff is pursuant to the North Carolina Tort Claims Act, N.C. Gen. Stat. § 143-291, et seq.
2. The defendant in this matter is an agency of the State of North Carolina.
3. The alleged named negligent employee, David B. Black, was an employee of the North Carolina Department of Transportation at the time of the alleged incidents herein.
4. The date of the alleged falls suffered by plaintiff are July 9, 1997 and August 22, 1997.
5. The hearing exhibits reflect medical care that was reasonable and necessary for the evaluation, diagnosis, and treatment of the injuries sustained by plaintiff in her alleged falls of July 9, 1997 and August 22, 1997.
6. The medical expenses, totaling $5,257.18 for the aforesaid medical care, were reasonable in amount.
7. The parties introduced and the undersigned admitted into evidence in this matter the following exhibits: Plaintiff's exhibits one through eight. Specifically, (1) plaintiff's medical records, (2) photos individually labeled A-Q, (3) photos individually labeled A-E, (4) attorney correspondence dated 4 August 1997, (5) attorney correspondence dated August 18, 1997, (6) attorney correspondence dated August 26, 1997, (7) attorney correspondence dated August 28, 1997, and (8) attorney correspondence dated September 10, 1997. Also introduced and admitted were the following defendant's exhibits: (1) responses to interrogatories for TA-16154, (2) responses to interrogatories for TA-16161, and (3) standard drawing for driveway turnout.
8. The issues to be determined by the Full Commission are: (1) whether the named employee of defendant was negligent, and if so, was that negligence the proximate cause of plaintiff's injuries? (2) What were the damages, if any, that proximately resulted to plaintiff? and (3) Was plaintiff contributorily negligent on July 9, 1997 and/or August 22, 1997?
9. Defendant filed a motion to dismiss plaintiff's claims prior to and again at the deputy commissioner hearing. Thereafter, by order filed December 4, 2001, Deputy Commissioner Pfeiffer denied defendant's motion to dismiss plaintiff's claims.
 ***********
Based on the evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. In September 1996, plaintiff and her family rented a house and lot at 815 Faith Road in Salisbury, North Carolina located near Jake Alexander Boulevard. When plaintiff's family rented this property, it had a large yard and a lengthy gravel driveway. The property itself was level and was relatively the same grade as the existing adjoining roadway, Faith Road.
2. In early 1997, defendant began construction of a highway extension for Jake Alexander Boulevard in Salisbury. Part of this construction took place on Faith Road in front of plaintiff's house.
3. The contractor performing the work on Faith Road and plaintiff's driveway was a company called Papco. David B. Black, the state employee listed in plaintiff's affidavits, was the Resident Engineer for the North Carolina Department of Transportation (hereinafter, N.C. DOT) who was in charge of supervising construction for this project. Although Mr. Black did not actively participate in the construction work of the project, it was his job to supervise the project, and he could reject work done by contractors if the work was not done properly.
4. Modification of Faith Road for defendant's project resulted in significant alterations to plaintiff's rented property. In order to connect Faith Road to Jake Alexander Boulevard, Faith Road had to be lowered. In addition, a portion of plaintiff's yard was removed, and the remaining property, as compared to newly-lowered Faith Road, was elevated. Due to the modifications to plaintiff's yard, a temporary driveway leading to plaintiff's house had to be constructed thereby completely changing its character. The modified driveway leading from plaintiff's house to Faith Road was no longer flat and required a downward grade to tie the driveway into the lowered Faith Road.
5. On the night of July 9, 1997, plaintiff and her husband were carrying out trash and recycling to the road for pick-up the next morning. As plaintiff walked down the driveway while carrying the recycling bin, she slipped and fell backwards to the ground.
6. An ambulance was called to the house to attend to plaintiff, who was experiencing severe pain. However, the ambulance had to park near Faith Road instead of up near the house because of the steepness of the driveway's grade. Plaintiff later refused transportation to the hospital via the ambulance and instead was transported by her husband in their own car.
7. Plaintiff presented at the emergency room at Northeast Medical Center where she complained of neck, leg, and back pain. Plaintiff was prescribed medication and diagnosed with cervical and lumbar strains. Plaintiff also had abrasions on her leg and ankle and a bruise on her low back. Plaintiff was instructed to follow-up with her family physician as needed.
8. Plaintiff presented to her family physician, Dr. Carla Jones, on July 25, 1997 who confirmed a diagnosis of neck and back strain with paresthesias. Dr. Jones prescribed medication and recommended that plaintiff not lift greater than ten pounds. Plaintiff followed up with Dr. Jones on August 18, 1997, with no improvement noted, so an orthopedic referral was made and an MRI recommended. Plaintiff underwent the MRI on August 22, 1997, which did not reveal disc protrusion or stenosis. An appointment for plaintiff was made for August 25, 1997 with an orthopedist at Orthopedic Group of Concord.
9. The night of August 22, 1997 plaintiff was walking with her mother out to her mother's car when she tripped, fell forward, and landed on her arm. When plaintiff fell, she and her mother saw an empty spray paint can rolling down the driveway, and they also noticed other discarded, empty spray paint cans. Plaintiff apparently tripped over one of the empty paint cans. After her second fall, plaintiff was again taken to the emergency room where it was ascertained that her right elbow was broken. Plaintiff's right arm was placed in a sling and a posterior splint. Plaintiff also complained of an exacerbation of her back pain.
10. Plaintiff was seen by the orthopedist as scheduled on August 25, 1997. At this time, the arm splint was removed and plaintiff was told to use just the sling. Physical therapy for plaintiff's back was contemplated but not until plaintiff's right arm was sufficiently healed.
11. At a follow-up appointment on September 11, 1997, plaintiff's right arm was doing much better, but she still had complaints of low back pain. Accordingly, physical therapy was prescribed for plaintiff. On October 9, 1997 plaintiff showed further improvement after having undergone some physical therapy. Continued home exercise was recommended and plaintiff was released from care to return on an as-needed basis.
12. Plaintiff, however, continued to experience pain, so on October 23, 1997 she consulted Dr. Chris K. Nagy at Salisbury Orthopaedic Associates. Physical therapy was prescribed. In December 1997, Dr. Nagy referred plaintiff to a pain clinic for evaluation and treatment as she continued to experience pain and difficulties. Plaintiff then underwent trigger point injections and was later prescribed a TENS unit. On March 5, 1998, Dr. Nagy released plaintiff to return on an as-needed basis with the recommendation that she continue doing her exercises and using the TENS unit. This is the last medical treatment that plaintiff has received for her injuries stemming from her falls on July 9, 1997 and August 22, 1997, although plaintiff continues to experience occasional pain and stiffness resulting from her back and arm injuries.
13. Prior to and after July 9, 1997 and August 22, 1997, plaintiff's husband complained to Mr. Black and others about the condition of the driveway and the property itself. Specifically, plaintiff's husband complained about the steepness and instability of the driveway and about debris left on the property by the construction workers. Upon receiving these complaints, Mr. Black conveyed them to the contractor's supervisor on site and asked him to check the condition of the driveway pursuant to standard procedures. Mr. Black also personally inspected plaintiff's driveway several times to make sure it was in safe condition. According to N.C. DOT regulations governing the grade of driveways during construction projects, the maximum grades allowed are plus or minus twenty-five percent. Each time Mr. Black inspected the driveway, he found it was within regulations and felt it was safe for its intended use. Even so, in order to appease plaintiff and her husband and help alleviate their safety concerns, Mr. Black requested to contractor to add more gravel to try and flatten out the driveway taking into consideration the gas line buried underneath the driveway.
14. Defendant, through its agent Mr. Black, was on notice that plaintiff and her family considered their yard and driveway to be unsafe. Plaintiff's husband talked to Mr. Black before plaintiff fell on July 9, 1997 to complain about the steepness of the driveway and the condition of the property with respect to debris and trash being left lying around the premises. Furthermore, on August 4, 1997, after plaintiff fell for the first time, plaintiff's newly-retained counsel informed Mr. Black that the area around plaintiff's home remained in an unsafe condition. Subsequent letters dated August 18, 1997, August 26, 1997, August 28, 1997, and September 10, 1997 reiterated the concerns plaintiff and her family had with regards to the condition of their leased property.
15. Defendant has a statutory duty to maintain, construct, and repair roadways, and to provide for the necessary planning, construction, maintenance and operation thereof for the safe transportation of people. Plaintiff's husband testified that the grade of the driveway was thirty-five percent (35%) around the time of his wife's first injury on July 9, 1997; conversely, Mr. Black testified that plaintiff's driveway was within the maximum grade allowed of plus or minus twenty-five percent (25%) at all times. As plaintiff's husband is not an engineer and in light of the fact that Mr. Black is an engineer with eleven years of experience, the Full Commission finds that the greater weight of the competent evidence presented shows that the construction of plaintiff's driveway was in compliance with this regulation at all times.
16. While plaintiff's driveway is not a public roadway, defendant and/or its contractors had to modify it in the course of working on a public roadway, and Mr. Black testified that plaintiff's driveway was part of the construction site. Accordingly, defendant had a duty to maintain a safe environment in the construction area, including plaintiff's driveway. While the work in and around plaintiff's property was done primarily by contractors, defendant ultimately was responsible for ensuring that the construction was done properly and in a safe manner and that the detours were kept in good repair.
17. Although defendant through its agent Mr. Black was aware that plaintiff and her family considered the altered property at 815 Faith Road to be unsafe, plaintiff failed to present evidence of any negligence on the part of Mr. Black with regard to the condition of plaintiff's driveway. The evidence shows that Mr. Black exercised due care in carrying out his duties as Resident Engineer and did everything within his duties to address plaintiff's husband's complaints and acted reasonably in performing such duties.
18. Plaintiff has provided no evidence that the spray can she allegedly tripped on at the time of her injury on August 22, 1997 was left there by an NCDOT employee; therefore, no negligence has been proven on the part of Mr. Black or any other NCDOT employee regarding this incident.
19. Plaintiff's testimony indicates that she was aware of and concerned regarding possible hazards in her driveway prior to her July 9, 1997 fall. Despite the obvious temporary condition of plaintiff's driveway and her concerns, she chose to walk down the driveway at night to take out the recycling bin rather than wait until daylight the following morning. Plaintiff was aware of the grade of the driveway, she was aware that it was covered in gravel, and she was aware that the area around the driveway was under construction; however, plaintiff voluntarily chose the more dangerous of two available options which makes her contributorily negligent and such negligence was the proximate cause of her fall.
20. At the time of plaintiff's August 22, 1997 fall, plaintiff had already fallen once walking down her driveway at night and knew to take extra care in that situation. In addition, plaintiff's testimony indicates that she was aware of debris in her yard, she was aware that the driveway still had a steep slope and loose gravel, and she was aware that the lighting was inadequate. Despite this prior knowledge, plaintiff failed to carry a flashlight to illuminate her way or watch her step; therefore, plaintiff again voluntarily chose the more dangerous of two available options rendering her contributorily negligent and such negligence was the proximate cause of her fall.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to prove that defendant North Carolina Department of Transportation by and through its named employee, Resident Engineer David B. Black, was negligent in maintaining the road construction site at plaintiff's home. N.C. Gen. Stat. §§ 143-291 etseq.
2. On both alleged dates of injury, July 9, 1997 and August 22, 1997, plaintiff had two ways open to use, one safe and the other dangerous, and plaintiff elected the dangerous way with knowledge of the danger; therefore, plaintiff's actions constitute contributory negligence.Dunnevant v. R.R., 167 N.C. 232, 233, 83 S.E. 347, 348 (1914); Crane v.Caldwell, 113 N.C. App. 362, 438 S.E.2d 449 (1994).
3. Defendant has proven that plaintiff was contributorily negligent in her falls of July 9, 1997 and August 22, 1997 and is therefore ineligible for recovery of an award pursuant to the North Carolina Tort Claims Act. N.C. Gen. Stat. § 143-299.1.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiff's claim for damages must be and is hereby DENIED.
2. Each side shall bear its own costs.
This the ___ day of November 2002.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER